## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **GENESIS PRODUCING COMPANY, LP** | § § § | |
| **Appellant** | § § | |
| **VS.** | § § | **CIVIL ACTION NO. 13-03342** |
| **SMITH BIG OIL CORPORATION, TODD M. SMITH, PHILLIP N. BELL AND JAMES A. WHITSON** | § § § § | |
| **Appellees** | § § | |

### APPELLANT GENESIS PRODUCING COMPANY, LP'S
### RESPONSE TO APPELLEES' MOTION TO DISMISS

**TO THE HONORABLE GRAY H. MILLER,**
**UNITED STATES DISTRICT JUDGE:**

Genesis Producing Company, LP, Appellants ("GPC") request that this Court deny Smith Big Oil Corporation and Todd M. Smith, Appellees (collectively, "SBO"), Motion to Dismiss Appeal.

### Overview

Genesis filed for bankruptcy and the underlying adversary proceeding in the Bankruptcy Court in order to cancel an assignment of its only asset on the basis of fraudulent transfer under the Bankruptcy Code. Genesis previously filed suit against SBO in state district court requesting a declaratory judgment that the

assignment was invalid and thereafter non-suited its claims before that court announced judgment. Genesis filed this bankruptcy and an appeal of the state district court's judgment as a collective effort to preserve the asset transferred by the assignment for the benefit of creditors. Thereafter, the Bankruptcy Court dismissed Genesis' adversary proceeding based on principles of discretionary abstention and Genesis filed this appeal. Although any decision by this Court to abstain or not to abstain from hearing this appeal is not reviewable pursuant to Section 1334(d), it does have jurisdiction to review the Bankruptcy Court's dismissal order under 28 U.S.C. §1334(a) and (b), which provides in pertinent part "the district courts shall have original and exclusive jurisdiction "of all cases under title 11" and original but not exclusive jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

## FACTUAL BACKGROUND

1.     Contrary to SBO's bare assertion, the facts are in material dispute. Genesis is in the business of oil and gas exploration and also engages in the purchase and sale of oil, gas and mineral leases and other related interests in Texas and other states. Genesis was established under the Texas Revised Limited Partnership Act on August 21, 2007.

2.     J. Morgan Smith individually is the sole limited partner of Genesis. J. MORGAN SMITH, INC., a Texas corporation, is the sole general partner of

Genesis. Todd M. Smith is the biological son of J. Morgan Smith and the sole officer, director and shareholder of SBO.

3. J. Morgan Smith is 72 years of age and of recovering health. The business of Genesis has slowly dwindled over the past several years while J. Morgan Smith was ill and its assets consist of a few remaining oil, gas and mineral leases or interests in leases. Genesis' business has continued to worsen, it owes substantial sums of money to many of its vendors/creditors, and it has unwittingly entered into a certain transaction in anticipation of various collection suits being filed by its creditors (and/or the necessity of filing bankruptcy) based on advice obtained from its former officers, Philip N. Bell, who said he got the advice from an attorney. The transaction, in question involved Todd M. Smith and SBO and serves as the basis of this adversary proceeding.

4. Specifically, Genesis owns certain rights, titles and interests in and to a lease for oil, gas and other liquid or gaseous materials dated January 12, 2005, by and between the Louisiana State Mineral Board, as Lessor, and South Coast Production Company, Ltd., as Lessee, recorded in ML 139, Page 741, Conveyance Records of Jefferson Parish, Louisiana, otherwise identified as State Lease 18441 (the "Lease"). A copy of the Lease is attached as *Exhibit "1,"* and incorporated herein by this reference. Payments under the Lease fluctuate greatly month to month and year to year. In connection with the Lease, Genesis receives a payment

- 3 -

in the average approximate sum of $12,000.00 from Whitson on the twenty-eighth day of each calendar month and has so received said payment on the twenty-eighth day of each calendar month since approximately May 2007.

5.      On April 11, 2012, J. Morgan Smith as President of Genesis' sole General Partner purportedly "assigned" the Lease to his son's company, SBO.  The assignment (the "Assignment") was to be effective as of April 1, 2012.   The Assignment was purportedly intended to transfer all right, title and interest of Genesis of any nature in connection with the Lease.  A copy of the Assignment is attached as *Exhibit "2,"* and incorporated herein by this reference.  The transfer was made solely for the purpose of preserving the income and revenues received on the Lease for the benefit of J. Morgan Smith and protecting such lease revenues from the claims of creditors of Genesis.  Prior to Defendant SBO's acceptance of the Assignment, Genesis revoked the Assignment.  A copy of the Affidavit of J. Morgan Smith is attached as *Exhibit "3,"* and incorporated herein by this reference.

6.      No consideration was ever paid or given for the Assignment.   Of course, later after he and his company are sued, he says the consideration for the Assignment was an antecedent debt owed him or because J. Morgan Smith felt guilty about prior investments his son had made in Genesis assets that did not perform as expected.

Q.      What did you pay for State Lease 18441?

A.      That was to make up for the Lemond well that went down is what I        understood.

Q.      Does it say that in this Assignment?

A.      No.

Q.      What does it say in this Assignment the consideration is?

A.      It doesn't.

A copy of the Deposition Excerpts of Todd Smith (29: 10-17), are attached as ***Exhibit "4"*** and incorporated herein by reference.

7.      On September 26, 2011, Todd M. Smith created Smith Big Oil Corporation for the sole purpose of purchasing certain oil and gas interests from his father, J. Morgan Smith.  On October 1, 2011, he purchased the "the wells owned by Cobra, Camden and Magnum."  See ***Exhibit "4,"*** at (10: 11-25; 11: 1-5).  Also included in the October 2011 transaction was an overriding royalty interest in State Lease 18441, which according to Todd M. Smith, did not include the "working interest" that is the subject of the Assignment.

Q.      . . . So what you're talking about is the overriding royalty interest and I'm talking about the working interest. So what you're saying that you acquired in October 2011 is the overriding royalty interest, correct?

A.      Correct.

Q.      You're not talking about the working interest under State Lease 18441, correct?

A.      Is that a question?

Q.      Yes.

A.    Correct.

*Id.* at (16: 2—25; 17: 1-5).

Q.    How much did you pay for the properties you acquired from Genesis Producing Company, L.P. in October of 2011?

A.    It seems like – well, there were several transactions. There was – over $300,000. There was an additional $39,000 for a property that was – David Dupree was trying to sell.

*Id.* at (18: 13-19).

Q.    Did your father make any representations to you about the status of these interests that you were purchasing?

A.    Yes.

Q.    What did he represent?

A.    That the Cobra and Camden wells will produce $20,000 a month and that Avinash – he owed Avinash money on the Magnum wells and that wouldn't be paid off until May and that would be an additional $7,000 a month. So by May of this year I was to be receiving $27,000 a month.

Q.    Well, how much have you received from these properties purchased in October 2011?

A.    I couldn't say with certainty. I'd have to – you're going to have to ask Kay.

*Id.* at (20: 23-25; 21: 1-12).

8.    It is clear that the Camden, Cobra, Magnum and Lemond wells were included in the October 2011 transaction, paid for by separate consideration and mutually exclusive from the wells transferred by the Assignment.

Q.    Well, and what I'm trying to do is trying to get an understanding as to this    transaction. So, so is it fair to consider that the $340,000 was for the  Camden -- the Camden, Cobra and this other piece of property that my    mind is escaping --

A.    Magnum.

- 6 -

*Id.* at (59: 11-16)

Q.    Was that for -- that was -- the $340,000 was you paid your father and   Genesis 340, and what you were going to get back was the Cobra, Camden        and Magnum properties; is that correct?

A.    Correct.

Q.    Okay. And so what I'm trying to be clear on, there was no other promises,    nothing else other than the $340,000 that your father and Genesis was        going to receive from you for these three properties?

A.    No, but it was -- it was open-ended. It was obvious that the $340,000 was        not going to cover what he needed.

Q.    And why do you say it was obvious? Why do you --

A.    Because that simply released the well. The wells or whatever he had in --    he need -- I loaned him another 65,000 on top of that and then another        39,000 for Crest -- South Crescent prospect.

*Id.* at (59: 19-25; 60: 1-11).

Q.    Okay. And you had subsequent dealings with your father that, I guess,        occurred in October of 2011. You mentioned this $65,000 that you -- that    you, I guess, loaned your father; is that correct?

A.    Yes. But we had subsequent dealings all the way through April. I mean, it        was an ongoing process.

Q.    And what was your understanding as to the need for the $65,000?

A.    We didn't discuss those kind of things. That's, you know -- he needed -- he        needed a loan and I didn't question. You know, Dad said, here's these        properties, they're worth 340, you're going to make $27,000 a month. I    didn't question that. It was just helping my father. He told me one thing        and I did it to -- and there wasn't time to -- it was either do it now or    everything, you know -- it's all going to collapse. The house of cards is        going to fall so I was willing to step up and --

*Id.* at (61: 16- 25; 62: 1-2).

Q.    Okay. Now, I want to kind of jump into -- go back into the April 2012   time frame. So I'm kind of leaving out -- I'm leaving out October 2011,     now going into April 2012. And I'm looking at the Assignment of State     Lease 18441. Okay. Now, what was -- what did you pay Genesis for that     particular property?

A.    The way it was explained to me was that -- let me back up. The lemond     well --

Q.    Right.

A.    -- that was generating $6,000 a month, I was promised $6,000 a month,     immediately upon assignment to me went down. The wells were assigned     to me as of October 4th, October 1st, but of course, they -- production     payments didn't come in until -- they only followed two months later. I     believe I recieved one check for the Lemond well for $5,000 and then a     $28,000     plugging liability bill.

*Id.* at (63: 3-24).

Q.    So --

A.    And Dad said --

Q.    I'm sorry.

A.    -- I will make this up to you. And this was, you know, part of his -- the     explanation I got was...

Q.    Are you finished?

A.    Yes.

Q.    Okay. So in other words, if I'm -- if I'm understanding your testimony,    after the October 2011 transfer of the Lemond well occurred, it became     obvious to you that you thought you might have overpaid for that well; is    that correct?

A.    Well, actually I didn't understand. They just told me the well went down. My experience is that, you know, wells go down all the time, you work it   over and they get it back in production. Nobody

> told me the well went    down permanently. It took a month to get
> that out of -- and that they knew    it was going down, that it was
> on its last leg and had known for months.

*Id.* at (64: 7-18).

> Q.    Was the Lemond well part of the Cobra, Camden property?
>
> A.    Yes.
>
> Q.    Okay. And so that relates back to that $340,000 that we
> previously talked   about, correct?
>
> A.    Correct.

*Id.* at (65: 5-10).

> Q.    And, Mr. Smith, when was the first time that you discovered
> that the    production of the Lemond well was off?
>
> A.    End of -- in January, February.

*Id.* at (66: 10-13).

8.    SBO's purchase of the oil and gas interests in the form of the Camden,

Cobra, Mangum and Lemond wells in October 2011 was completed by the

payment of the $340,000, and any new promise by Plaintiff to transfer the

"working interest" in State Lease 18441 under the Assignment must be based upon

a new and separate consideration.  It is Texas law that each independent contract

must be supported by new, independent consideration.  *See Mason v. Babin*, 474

S.W.2d 809, 812 (Tex. App.---Waco 1971, writ ref'd n.r.e.).  Regardless, the trial

court granted SBO's and Todd Smith's motion for summary judgment.

9.    In fact, Todd M. Smith has testified the Assignment was a complete

surprise to him.  He had no conversations with his father regarding the purchase of

the "working interest" in State Lease 18441.  It was transferred gratuitously and no negotiation occurred.

Q.     When were you first aware that this Assignment was going to be made?

A.     My father called me and told me that there was an Assignment coming,     that I needed to get to – sign it and send it on to P.J. in Louisiana.

Q.     When did he call you?

A.     Sometime in April after he signed it, I assume.

A copy of the Deposition Excerpts of Todd Smith (23: 8-12), attached as *Exhibit "4"* and incorporated herein by reference.

Q.     When did you sign it?

A.     I believe the 13th.

Q.     Were you in attendance at a meeting in Corpus Christi at the offices of     Genesis Producing Company, L.P.?

A.     Yes. Several.

*Id.* at (23: 17-20).

Q.     So what were the conversations that took place at this meeting on April     13th?

A.     I don't really recall any conversations.

Q.     You don't recall any conversations?

A.     No, I don't.

- 10 -

Q.    Was there anything discussed about the assignment of State Lease 18441?

A.    Not that I know of.

Q.    No discussion?

A.    I don't believe there was any discussion at all at the meeting.

*Id.* at (25: 14-25)

Q.    What was the reason for doing the Assignment from Genesis Producing    Company, L.P. to Smith Big Oil Corp.?

A.    I wasn't involved in that decision.

*Id.* at (28: 7-10).

Q.    Did you have any agreements, written or verbal, about what was going to        be done with the income off the working interest in State Lease 18441?

A.    No.

Q.    What is the working interest in State Lease 18441?

A.    I don't know.

Q.    Huh?

A.    I don't know.

*Id.* at (41: 24-25; 42: 1-7)

Q.    Okay. And so, so what you're testifying to then is that now we're going  back into the April 2012 transfer that I believe is part of Exhibit No. 2 here involving  State Lease No. 18441. Did you approach your dad or did he        approach you to say, okay, I'll make it up to you by assigning this        particular lease to you?

A.    Oh, I never -- I didn't know anything about it until I got a phone call from     Dad telling me that it had already been -- he had already signed it.

- 11 -

Q.    So you had no prior discussions prior to the execution of Exhibit No. 2    with your father about the transfer of that particular property?

A.    No.

*Id.* at (66: 24-25; 67: 1-11).

Q.    But did you have that conversation with him in which he came to you and    said, I'm going to give you or assign to you State Lease No. 18441 because of these added responsibilities, liabilities, whatever you've taken    on through that Camden, Cobra and Magnum transaction?

A.    No.

*Id.* at (68:22-25; 69: 1-4).

10.    At a meeting held on April 13, 2010, Genesis unequivocally requested the Assignment back.  It was discussed that such transfer may be a fraud on creditors.  At the meeting was Todd M. Smith, Philip N. Bell, J. M. Smith, Beverly Smith and Avinash Ahuja.  At the time of the meeting the Assignment had not been delivered to Todd M. Smith or signed by him or notarized by Philip N. Bell. P.J. Voorhies and Valerie Bacilla, the witnesses signatures on the Assignment, did not actually witness the signature of J. Morgan Smith.

Q.    Was P.J. Voorhies or Valerie Bacilla –

A.    No.

Q.    -- there at your house –

A.    No.

Q.    -- on April 11th –

A.    No.

Q.    -- when you signed the document?

A.    No, sir.

A copy of the Deposition Excerpts of J. Morgan Smith (140: 18-25), are attached

as **Exhibit "5"** and incorporated herein by reference.   Similarly, Todd M. Smith

did not execute the Assignment in accordance with the formalities required by

Lousiana law.

> Q.    This Assignment, deposition Exhibit No. 2, I believe you said
> was signed  by you on the 13th. Where you when you signed that
> Assignment?
>
> A.    On the 13th I was in Corpus Christi.

A copy of the Deposition Excerpts of Todd Smith (36: 11-14), are attached as

**Exhibit "4"** and incorporated herein by reference. *Id.*

> Q.    When was the Assignment of State Lease 18441 recorded?
>
> A.    I don't have a copy of that. Let's see, the 17th, it looks like.
>
> Q.    How was it recorded? How did it get recorded?
>
> A.    I took it to the courthouse in Gretna, Louisiana.
>
> Q.    On the 17th?
>
> A.    Yes.

*Id.* at (37:5-13).

> Q.    So you brought the Assignment with you from the April 13th,
> 2012  meeting. The witness blanks were empty and you took it
> to them to sign and then you took it to record?
>
> A.    No, I didn't take it to them to sign.

*Id.* at (38: 13-17).

> Q.    Okay. After Phillip Bell acknowledged your signature on the
> Assignment, did you take the Assignment with you back to
> Houston?

A.    Yes.

Q.    Had Mr. Voorhies and Ms. Bacilla signed as of that time, April 13th?

A.    No.

*Id.* at (38: 21-25; 39: 1-2).

Q.    So if I understand your testimony, Mr. Smith, you went home from the       April 13th meeting with the Assignment in hand, unsigned by the       witnesses? You then leave Houston at some point, travel to Lafayette to       Mr. Voorhies' office and he and Ms. Bacilla sign as witnesses, correct?

A.    Correct.

*Id.* at (40: 11-17).

11.    Again, neither Todd M. Smith nor SBO paid any consideration for the Assignment of the Lease.  The language of the Assignment also reflects no intent to "gift" any right, title or interest in the property purportedly assigned thereby.  To the contrary, J. Morgan Smith's purpose was solely to protect his right, title and interest in the revenues to be derived from the assigned property in anticipation of Genesis' creditors filing suits and/or its filing for bankruptcy.  Genesis and SBO agreed to the stated purpose of the Assignment and understood that it was never intended to actually convey legal or equitable ownership in the Lease or its income or revenues.

12.    On numerous and several occasions Genesis and its attorney have made demand on Todd M. Smith and/or SBO to execute a reassignment of the Lease to Genesis.  Todd M. Smith and/or SBO have refused all entreaties for them

to do the right thing and, on one occasion, requested that J. Morgan Smith agree to divide the income derived from the Lease equally as a compromise without any regard for the creditors of Genesis.   The revenue/income from the Lease is the principal and only source of revenue with which to pay creditors of Genesis.   On April 30, 2012, Genesis' counsel sent the attached notice that the Assignment was made "[t]hrough error, mistake or fraud" and demanded that Whitson continue making payments thereon to Genesis.   A copy of the Letter is attached as *Exhibit "6,"* and incorporated herein by this reference.   On May 10, 2012, Smith's counsel sent the attached response claiming the Assignment "was part of a legitimate business transaction" and instructed that all payments be made to Todd M. Smith and/or SBO.   A copy of the Letter is attached as *Exhibit "7,"* and incorporated herein by this reference.

13.     Due to the fact that Todd M. Smith and/or SBO has taken advantage of the situation and Todd M. Smith's and/or SBO's refusal to honor the true stated objective of the Assignment, Genesis was forced to file a lawsuit in state district court for declaratory judgment and for injunctive relief.

## PROCEDURAL HISTORY

14.     On May 24, 2012, the Genesis filed suit against SBO, Todd M. Smith and Whitson for breach of contract, conversion, and requested a declaratory judgment that the Assignment was void for the following reasons, to-wit:

- 15 -

A.    A declaration that the Assignment by and between Genesis and SBO is void and has no validity for failure of consideration;

B.    A declaration that the Assignment by and between Genesis and SBO is void and has no validity due to error or mistake;

C.    A declaration that the Assignment by and between Genesis and SBO is void and has no validity due to fraud; and,

D.    A declaration that the Assignment by and between Genesis and SBO is void and has no validity due to its improper witnessing and notarization.

15.    On February 22, 2013, SBO and Todd M. Smith filed their Traditional and No Evidence Cross Motions for Summary Judgment Against Genesis. A copy of the MSJ is attached as *Exhibit "8,"* and incorporated herein by this reference. In the Motion, SBO makes the bare assertion that "SBO and Todd M. Smith request, and are entitled to, Traditional and No-Evidence Summary Judgment on all of GP's claims." *Id.* However, SBO did not move for summary judgment or make argument for summary judgment in the motion on all of the Genesis' claims for declaratory judgment. *Id.* An oral hearing was held on March 15, 2013. At the summary judgment hearing, the Court inquired whether either party really thought their claims were summary judgment worthy. After considering the parties' motions for summary judgment and hearing argument, the Court did not announce a ruling.

16.     On Wednesday, April 17, 2013, the Court considered Genesis' motion for continuance and request to file an amended pleading less than seven days before trial.   A copy of the Motion for Leave is attached as *Exhibit "9,"* and incorporated herein by this reference.   Again, trial was scheduled for Monday, April 22, 2013.  Genesis had previously filed a First and Second Amended Petition expressly adding rescission as a remedy to its breach of contract claim although that was the nature of the original allegation to rescind the Assignment due to mistake, fraud and/or failure of consideration.   Copies of the First and Second Amended Petition are attached as *Exhibit "10"* and *Exhibit "11,"* respectively, and incorporated herein by this reference.   During the oral hearing, the Court acknowledged it had expressed doubt at the summary judgment hearing whether either parties' motions were summary judgment worthy and considered Genesis' motion for continuance of the trial date.   Genesis had orally requested at the hearing to delay the trial to Wednesday, April 24, 2013 and the Court granted the request and set the case number one on the jury docket for that date.  The Court stated that it would rule on the summary judgment motions on Friday, April 19, 2013 in light of the looming trial date.  The Court made every indication that the case was going to trial on Wednesday, April 24, 2013.

17.   On Monday, April 22, 2013, at 3:44 PM, the Court sent an email to the parties' attorneys announcing its ruling on the summary judgment motions. The trial court's announcement of its intended ruling was clear, to-wit:

Counsel:

> On Friday the court denied Plaintiff's Motion to Strike the Intervention of EOG Resources, Inc.
>
> Today, the court is denying Plaintiff's Motion for Summary Judgment and granting the Defendants' Motion for Summary Judgment *as to Breach of Contract and Conversion of the Lease that is the subject of this lawsuit*. The court is denying the Defendants' Motion for Summary Judgment as to proceeds of the lease that are deposited into the registry of the court.
>
> Robert K. Schaffer

A copy of the Email is attached as ***Exhibit "12,"*** and incorporated herein by this reference (emphasis added).  Accordingly, the trial court preserved Genesis' claims for declaratory judgment for trial as well as ruled that the proceeds from the Lease would remain in the registry of the Court until after trial, which was number one on the jury docket scheduled for Wednesday, April 24, 2013.

18.   Curiously, on April 22, 2013, at 4:47 PM, SBO sent an "email" to the trial court judge requesting a telephone conference seeking "clarification" of the court's "order and its effect on trial Wednesday."  A copy of the Email is attached as ***Exhibit "13,"*** and incorporated herein by this reference.

19.    On Tuesday, April 23, 2013, the requested conference call was conducted beginning at approximately 9:58 AM.  The "clarification" conference call lasted for thirty-four (34) minutes.  Apparently the Court did not transcribe the conference call and was not on the bench at the time of the call. The parties' urged further argument regarding whether summary judgment was worthy on Genesis' declaratory judgment claims.  Genesis argued that SBO's motion did not cover all of Genesis claims asserted for declaratory judgment.  The Court reiterated its ruling that it was granting SBO's motion, in part, but denying Genesis' motion. The Court went further and expressly stated it was denying SBO's motion as to the proceeds deposited into the Court's registry. The Court's ruling was somewhat clarified but still doubtful and uncertain and clearly subject to change.  The Court requested defense counsel to prepare and circulate an order for counsel's and the Court's review.  No terms of the order were dictated or suggested by the Court other than that same be detailed.

20.    At 12:32 PM on Tuesday, April 23, 2013, Genesis filed a Notice of Non-suit of all of its causes of action asserted in the state court litigation.  A copy of the Notice of Non-Suit is attached as *Exhibit "14,"* and incorporated herein by this reference.

21.    On Wednesday, April 24, 2013, the trial court signed the "Final Order on Plaintiff's Claims" that SBO had drafted and submitted for review at the Court's

request.  A copy of the Final Order is attached as *Exhibit "15,"* and incorporated herein by reference.  This is the first Order signed by the Court relating to the summary judgment motions.  In the Order, the trial court separately references Genesis' causes of action of conversion, breach of contract, and the four separate requests for declaratory judgment and states that each is "DISMISSED WITH PREJUDICE."  At no time prior to the filing of Genesis' Notice of Non-Suit had the trial court announced a ruling on all of Genesis' causes of action.

22.    On July 18, 2013, Genesis filed its Suggestion of Bankruptcy with the trial court.  A copy of the Suggestion of Bankruptcy is attached as *Exhibit "16,"* and incorporated herein by this reference.

23.    On July 19, 2013, notwithstanding the fact that GP had filed for bankruptcy the day before and so notified the trial court, it signed a "Final Judgment" ordering the proceeds to be paid to SBO rather than defer everything to the bankruptcy court as dictated by the automatic stay.  A copy of the Final Judgment is attached as *Exhibit "17,"* and incorporated herein by this reference.

24.    On August 3, 2013, Genesis filed its complaint initiating the adversary proceeding in the Bankruptcy Court.  A copy of the Complaint is attached as *Exhibit "18,"* and incorporated herein by this reference.  Contrary to SBO's assertion, Genesis' complaint in the Bankruptcy Court is substantially different from the complaint filed in state district court.  In contrast to the state court

petition, the complaint filed in the Bankruptcy Court includes J. Morgan Smith and Phillip Bell as party defendants for the purpose of pleading legal theories of (1) fraudulent transfer under the Bankruptcy Code based on the theory of Todd M. Smith being an insider at the time of the Assignment by virtue of the familial relationship with J. Morgan Smith,  (2) the equitable remedy of constructive trust based on the theory of a fiduciary or confidential relationship between Genesis and its principal, J. Morgan Smith, and Bell (a long-standing employee and officer of Genesis) and Todd M. Smith (J. Morgan Smith's biological son), and (3) civil conspiracy on the theory that SBO, Todd M. Smith and Bell acted in concert for the purpose of obtaining the Assignment of the Lease through an unlawful purpose. The complaint also asserts fraudulent inducement, unjust enrichment and the equitable remedy of rescission for breach of contract.  The state court petition asserted none of these legal theories except for breach of contract but did not expressly ask for the remedy of rescission.  Rather, in the state court petition, Genesis sued for breach of contract, conversion and requested a declaratory judgment that the Assignment was invalid for failure of consideration, accident and mistake, fraud and improper witnessing and notarization under Louisiana law. Accordingly, Genesis has sought entirely different relief based on completely different legal theories one of which (fraudulent transfer) could only be asserted in the Bankruptcy Court.

25.     On September 6, 2013, the Bankruptcy Court conducted a hearing after which the Court announced its decision to dismiss Genesis' complaint with prejudice.    A copy of the Dismissal Order is attached as **Exhibit "19,"** and incorporated herein by this reference.   The Bankruptcy Court ruled that it was dismissing Genesis' complaint based on principles of discretionary abstention.

26.     On November 27, 2013, SBO filed its Motion To Dismiss Appeal with this Court arguing that this Court has no jurisdiction to review the Bankruptcy Court's Order of Dismissal under 28 U.S.C. §1334(d).   To the contrary, this Court clearly has jurisdiction to consider this appeal under 28 U.S.C. §1334(a) and (b). SBO has misinterpreted the statute.

27.     On December 11, 2013, the Bankruptcy Court dismissed Genesis' second chapter 11 case because Genesis' operating reports show no funds, no income or operating expenses and the plan of reorganization is not feasible without any assets or revenue.   Again, Genesis' sole asset is the Lease covered by the Assignment, and SBO paid no consideration for the Assignment.   A copy of the Order is attached as **Exhibit "20,"** and incorporated herein by this reference.

28.     On December 13, 2013, SBO filed its Supplement To Motion To Dismiss Appeal asserting the dismissal of Genesis' Chapter 11 case as an additional ground for this Court to dismiss this appeal.   Contemporaneously with

the filing of this Response, Genesis has filed a request for additional time to respond to SBO's newly asserted ground for dismissal of the appeal.

<u>**ARGUMENT AND AUTHORITIES**</u>

**A.    THIS COURT HAS JURISDICTION UNDER 28 U.S.C. §1334.**

29.     SBO correctly notes that two relevant statutes curtail the ability of "federal appeals courts" to hear appeals of a "district court's" decision to abstain or remand a case to state court on discretionary grounds.  First, a district court's decision to abstain from "hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11" for reasons of comity is not reviewable by the court of appeals.  *See* 28 U.S.C. § 1334(d).    Second, a district court's decision to remand a case, "on any equitable ground, " that had been removed to the district court under 28 U.S.C. § 1452(a) is not reviewable by the court of appeals.  *See* 28 U.S.C. § 1452(b).  Additionally, a third statute strips federal appeals courts of appellate jurisdiction of a district court's mandatory remand based on a lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(d).  *See In re Golden Restaurants, Inc.*, 10-10672, (5th Cir. 2010).  However, this case is not an appeal of a federal district court's decision to abstain from hearing a proceeding "arising under title 11 or arising in or related to a case under title 11."

30.     Rather, Genesis has filed an appeal of the Bankruptcy Court's Order of Dismissal based on discretionary abstention to this Court, a federal district court,

which is authorized under 28 U.S.C. §1334(a) and (b).  The starting point in the

analysis is 28 U.S.C. 1334, which in relevant part that provision provides as

follows, to-wit:

> (a)    Except as provided in subsection (b) of this section, the district court shall   have original and exclusive jurisdiction of all cases under title 11.

> (b)    Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall         have original but not exclusive jurisdiction of all civil proceedings arising  under title 11, or arising in or related to cases under title 11.

28 U.S.C. Section 1334 (a) and (b) lists four types of matters over which the

district court has jurisdiction:

1.      "cases under title 11";

2.      "proceedings arising under title 11";

3.      proceedings "arising in" a case under title 11, and

4.      proceedings "related to" a case under title 11.

28 U.S.C. 1334 (a), (b).  The first category has been interpreted to mean the

bankruptcy petition itself, over which the district courts (and their bankruptcy

units) have original and exclusive jurisdiction.  The concern here, however, is with

the other proceedings listed in subsection 1334(b), over which the district courts

have original, but not exclusive, jurisdiction.  *See Matter of Wood*, 825 F.2d 90

(5th Cir. 1987).

- 24 -

31.   SBO has clearly misinterpreted Section 1334.   Contrary to SBO's assertion, the Bankruptcy Court's decision to abstain or not to abstain is reviewable by appeal or otherwise by the court of appeals in accordance with the expansive jurisdiction created under Section 1334 (a) and (b) of the Act.   Courts have recognized that the grant of jurisdiction under section 1334 was broad. *See, e.g., Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *In re Salem Mortgage Co.*, 783 F.2d 626, 633-34 (6th Cir. 1986).   First, subsection (b) vested an expansive bankruptcy jurisdiction in the district courts.   Second, subsection (c) conferred the power to exercise that jurisdictional grant in the bankruptcy courts. *See* 28 U.S.C. 1334 (a) and (b).   Section 1334(d) only precludes a discretionary decision by this Court to abstain or not to abstain from being appealed. *See id*. at 1334(d).

32.   SBO has argued below and to this Court that state law issues predominate over federal or bankruptcy issues.   In doing so, SBO incorrectly cites Section 1334(d) for the proposition that the Bankruptcy Court's decision to abstain is not reviewable by this Court.   SBO has imposed a restrictive interpretation of the statutory grant of jurisdiction under Section 1334.   The Act grants the district court power to abstain whenever appropriate "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. §1334(c)(1), (2). The abstention provisions of the Act demonstrate the intent of Congress that

concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case. Here, the possibility of abstention was not raised in this Court and therefore shas been waived.

33.     For purposes of determining whether a particular matter falls within bankruptcy jurisdiction, the Fifth Circuit has adopted the following test: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See Matter of Wood*, 825 F.2d 90 (5th Cir. 1987).   Applying that test to the instant case, this Court should find that the adversary complaint is sufficiently related to the underlying bankruptcy to allow the district court to exercise jurisdiction under section 1334.

34.     The reasons that frame that conclusion is because the adversary complaint filed by Genesis against SBO and others will clearly have an effect on Genesis' bankruptcy.   Genesis seeks to recover its only asset that generates on average revenue of $12,000.00 each month.   Genesis seeks to set aside the Assignment of the Lease to SBO for which SBO and Todd M. Smith paid no consideration whatsoever.   Nothing!   To the extent that Genesis' interest in the Lease conveyed by the Assignment is now property of the estate, the complaint against SBO and the others has a potential effect on the estate.   Genesis will be able to pay all the creditors from the revenue generated from the Lease.

**B.   THIS COURT HAS DISCRETION TO RETAIN JURISDICTION AFTER DISMISSAL OF THE UNDERLYING BANKRUPTCY CASE.**

35.     On December 11, 2013, the Bankruptcy Court indeed granted the Trustee's Motion to Dismiss Genesis' Chapter 11 case because Genesis had no income, revenue or assets from which to pay its creditors.   However, the Bankruptcy Court only dismissed the case with prejudice to refiling "without first obtaining this Court's approval to re-file."   In the event Genesis is successful in the appeal of the state court judgment or otherwise successful in the underlying adversary proceeding then it would obtain control over the Lease and have the revenues generated from the Lease from which to pay creditors and complete the reorganization under Chapter 11.

36.     It would be proper for the Bankruptcy Court to retain jurisdiction over the adversary proceeding after the close of the Chapter 11 case.   Again, a district court has original, but not exclusive, jurisdiction of matters "arising under," "arising in," or "related to" a case under Title 11. 28 U.S.C. § 1334(b).   Because section 1334(b) defines jurisdiction conjunctively, a district court has jurisdiction over the subject matter if it is at least related to the underlying bankruptcy.   *In re Majestic Energy Corp.*, **835 F.2d 87**, 90 (5th Cir.1988).   A matter is "related to" a case under Title 11 if the outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re Wood*, **825 F.2d 90**, 93 (5th Cir.1987).

37.    In the instant case, and as noted above, the Bankruptcy Court clearly had jurisdiction over matters affecting the Genesis' estate while the Chapter 11 case was proceeding. In the Fifth Circuit, as a general rule, the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings. *In re Querner*, 7 F.3d 1199 (5th Cir. 1993).   The general rule favors dismissal because the court's jurisdiction over the related proceedings depends upon the nexus between the underlying bankruptcy case and the related proceeding.    *Id.* Notwithstanding the general rule, however, nothing in the statute governing bankruptcy jurisdiction mandates automatic dismissal of related proceedings upon termination of the underlying bankruptcy case.   See 11 U.S.C. § 349 (listing the effects of dismissal of the underlying bankruptcy case).   The decision to retain jurisdiction over related proceedings rests within the sound discretion of the bankruptcy court.   In determining whether a bankruptcy court abused its discretion by retaining jurisdiction over related proceedings after dismissal of the underlying bankruptcy case, the Fifth Circuit has analogized to cases concerning the authority of federal district courts to retain pendent state claims after federal claims have been dismissed.   *Id.* at 1202.   The Supreme Court has held that a federal district court must consider four factors in deciding whether to retain jurisdiction over pendent state claims after the dismissal of federal claims: economy, convenience,

fairness, and comity. See *Carnegie-Mellon Univ. v. Cohill*, **484 U.S. 343**, 353, **108 S.Ct. 614**, 620-21, 98 L.Ed.2d 720 (1988).

38.     Applying these factors to the instant case, this Court should find that the Bankruptcy Court's decision to retain jurisdiction would not be an abuse of discretion.   <u>First of all, the Bankruptcy Court did not even dismiss Genesis' adversary proceeding because the Chapter 11 case had been previously dismissed and that issue is not even ripe for this Court to review</u>.   Nevertheless, judicial economy favors retaining jurisdiction because Genesis has asserted a fraudulent transfer claim under the Act and the Bankruptcy Court has special knowledge in applying those rules to the fact situation that exists between Genesis and SBO. Moreover, the resolution of the dispute between Genesis and SBO and either success in the appeal of the state court judgment or the underlying adversary proceeding will clearly have an effect on the bankruptcy case.   Upon obtaining the Lease and the revenues generated by the Lease, Genesis will have the recourses to pay creditors and complete a reorganization under Chapter 11.

39.     Likewise, Genesis would suffer inconvenience should the adversary proceeding be dismissed in the event it is not successful in the appeal of the state court judgment because it would be put in the posture of having to re-file it in the Bankruptcy Court in order to have any relief.   The only cause of action asserted in the state court proceeding to render the Assignment of the Lease void was the

claim for declaratory judgment and Genesis has now asserted a fraudulent transfer claim under the Act, which can only be asserted in a federal court. No such claim was made in the state court and the trial court denied Genesis leave to amend its pleadings to assert rescission. Genesis did not lack diligence in amending its pleadings in the state court but the trial court denied leave regardless and Genesis is no forever barred from asserting rescission or fraudulent transfer in the state court. As to fairness, there is no evidence that retaining jurisdiction over the adversary proceeding would cause undue delay or prejudice to SBO and, again, it is possible Genesis will have no relief in the event it loses the appeal of the state court judgment and SBO paid absolutely no consideration for the Lease. Furthermore, the Bankruptcy Court presumably has greater expertise in matter relating to fraudulent transfers than does the state district court. Finally, as a matter of comity, the Bankruptcy Court will in no way interfere with the state court judgment by adjudicating the fraudulent transfer claim under the Act as such a claim was not asserted in the state court proceeding. Accordingly, considerations of judicial economy, convenience, fairness and comity support the Bankruptcy Court's retention of jurisdiction over the adversary proceeding.

40.    For these reasons, Genesis asks this Court to deny SBO's and Todd M.

Smith's Motion to Dismiss Appeal.

<div style="margin-left: 50%;">

Respectfully submitted,


*/s/ Jeffrey J. Tompkins*
JEFFREY J. TOMPKINS
Texas Bar No. 20125500
1413 Brittmoore Road
Houston, Texas 77043
Telephone:  713-787-5333
Facsimile:  713-787-5334

OF COUNSEL:
CHRISTOPHER D. NUNNALLEE
Texas Bar No. 24025568
1413 Brittmoore Road
Houston, Texas 77043
Telephone:  713-787-5333
Facsimile:  713-787-5334

**ATTORNEYS FOR APPELLANT**

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served via electronic transmission to the following parties-in-interest and the Court's ECF system and other parties-in-interest via the Court's ECF system on the 17th day of December, 2013:

Tom Kirkendall
Law Office of Tom Kirkendall
2 Violetta Ct
The Woodlands, Texas  77381-4550
281.364.9946
**COUNSEL FOR SMITH BIG OIL CORPORATION
AND TODD M. SMITH, APPELLEES**

Joseph G. Thompson III
Dick Watt
Hannah Sibiski
**WATT BECKWORTH THOMPSON HENNEMAN & SULLIVAN LLP**
711 Louisiana Street, 18th Floor
Houston, Texas  77002
**CO-COUNSEL FOR SMITH BIG OIL CORPORATION
AND TODD M. SMITH, APPELLEES**

David Coover
COOVER & COOVER
921 N. Chaparral Street, Ste. 102
Corpus Christi, Texas  78403
david@cooverandcoover.com
**COUNSEL FOR PHILIP BELL, APPELLEE**

James A. Whitson, *Pro Se,* Appellee
7660 Woodway, No. 312
Houston, Texas  77063

_____*/s/  Jeffrey J. Tompkins*_____
JEFFREY J. TOMPKINS

\C:MYDOCUMENTS:GENESIS.V.SMITH BIG OIL:RESPONSE TO MOTION TO DISMISS APPEAL\